IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICKEY PHILLIPS, as Administrator )
of the Estate of SUSAN PHILLIPS, deceased, )
  )
      **Plaintiff,** )  **CASE NO. 2:06-cv-84-WKW-SRW**
  )
vs. )
  )
PACTIV CORPORATION and )
LOUISIANA-PACIFIC CORPORATION, )
  )
      **Defendants.** )

**DEFENDANT PACTIV CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS AND
RULE 12(E) MOTION FOR A MORE DEFINITE STATEMENT**

Defendant Pactiv Corporation ("Pactiv") respectfully submits this memorandum of law in support of its Rule 12(b)(6) Motion to Dismiss and Rule 12(e) Motion for a More Definite Statement.

## INTRODUCTION

Plaintiff asserts ten causes of action against Pactiv arising out of its operation of a wood treatment facility in Lockhart, Alabama from March 6, 1979 through November 1983. First Amended Complaint ("FAC") ¶¶ 6, 10, 40. Beginning in November 1983, Louisiana-Pacific Corporation owned and operated the facility. *Id.* ¶ 40. Plaintiff filed his initial Complaint on January 30, 2006, more than 22 years after Pactiv ceased operations at the facility.

Plaintiff alleges that Pactiv's operations from 1979 through 1983 created a cloud of toxic dust and vapors that migrated offsite. *Id.* ¶¶ 62, 67, 69, 72. Plaintiff also alleges that Pactiv released other wastes which migrated through groundwater and adjacent streams or ditches. *Id.*

¶¶ 62, 63, 65-66.  Moreover, Plaintiff alleges that Pactiv sold contaminated scrap wood that was burned as firewood in neighboring homes.  *Id.* ¶¶ 78, 126-131.  The decedent, Susan Phillips, lived in Lockhart most of her life and allegedly suffered injuries causing her death as a result of these emissions and releases.  *Id.* ¶¶ 5-8.

The Court should dismiss the First Amended Complaint against Pactiv in its entirety because Plaintiff's claims are time-barred under the applicable statutes of limitations and Alabama's 20-year rule of repose.  The decedent's claims against Pactiv accrued no later than November 1983 when Pactiv ceased operations and sold the facility to Louisiana-Pacific.  Since the decedent could not have asserted these claims against Pactiv if she was still alive, neither can Plaintiff as the personal representative of the decedent's estate.

If the Court does not dismiss the First Amended Complaint in its entirety, it should nonetheless dismiss Counts 1 through 8 because Plaintiff lacks standing to assert them.  Since the decedent died before Plaintiff filed suit, the only cause of action available to Plaintiff, as the personal representative of the decedent's estate, is a claim under the Alabama Wrongful Death Act.  The tort claims asserted in Counts 1 through 8 died with the decedent.

Moreover, Counts 3 (negligence *per se*), 6 (conspiracy), 7 (products liability), 9 (spoliation, destruction of evidence), and 10 (homicide) each fail to state a claim for the additional reasons set forth below and should be dismissed.

Alternatively, Counts 3 (negligence *per se*), 6 (conspiracy), and 9 (spoliation, destruction of evidence) are so vague and ambiguous that Pactiv cannot reasonably frame a proper responsive pleading to the allegations asserted therein.  If these claims are not dismissed, pursuant to Rule 12(e), the Court should order Plaintiff to provide a more definite statement of his claims for relief for the reasons described below.

## STANDARD OF REVIEW

A complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where "it is demonstrated beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005) (citations omitted). A court construes "the complaint in the light most favorable to the plaintiff and accept[s] as true all facts which the plaintiff alleges." *Id.* The statute of limitations may be raised on a motion to dismiss for failure to state a claim "when the complaint shows on its face that the limitations period has run." *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

A motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure should be granted whenever "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The Eleventh Circuit particularly disfavors vague, generalized "shotgun pleadings." *See, e.g., Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997). Plaintiffs must plead their claims with clarity and precision. *See, e.g., Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 365 (11th Cir. 1996).

## ARGUMENT

I.  **Plaintiff's Claims Against Pactiv Accrued No Later Than November 1983 And Are Barred By The Applicable Statutes of Limitations.**

A.  **The Applicable Statutes of Limitations Provide, At Most, A Six-Year Limitations Period.**

Plaintiff's claims are subject to several different statutes of limitations. As set forth in the table below, under the applicable statutes of limitations for each claim asserted by Plaintiff, at most, Plaintiff had a six-year limitations period.

| Claim | Statute of Limitations | Legal Authority |
|---|---|---|
| Negligence (Count 1) Negligence Per Se (Count 3) Conspiracy (Count 6) Products Liability (Count 7) Failure to Warn (Count 8) Spoliation (Count 9) | 2 year | Ala. Code § 6-2-38(l) |
| Recklessness (Count 2) Intentional Tort (Count 4)[1] Trespass (Count 5)[2] | 6 year | Ala. Code § 6-2-34; *McKenzie v. Killian*, 887 So. 2d 861, 870 (Ala. 2004) |

Plaintiff asserts a wrongful death claim as a representative of the decedent's estate. *See* FAC ¶ 161. Such a claim must be brought within two years of the date of death, provided that the decedent's claims were not already time-barred while she was alive. *See* Ala. Code § 6-2-38(a); *Hall v. Chi*, 782 So. 2d 218, 221 (Ala. 2000) ("[I]f a decedent's cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action."). Plaintiff does not identify when the decedent died. At most, the wrongful death statute could add an additional two years to the maximum six-year limitations period set forth above. The Court should therefore construe the First Amended Complaint in a light most favorable to Plaintiff and assume that the decedent died two years before Plaintiff filed suit.

Plaintiff also alleges that the parties entered into an agreement to toll the statute of limitations for a defined period of time. *See* FAC ¶ 95. Indeed, the parties agreed to toll the running of the limitations period from, at most, February 9, 2005 through January 27, 2006. The

---

[1] There is some uncertainty under *McKenzie* whether Plaintiff's recklessness and intentional tort claims would be subject to a 2-year or 6-year limitations period. For purposes of this motion, however, the difference is immaterial because Plaintiff's claims are untimely under either period.

[2] It is unclear from the First Amended Complaint whether Plaintiff even asserts a trespass claim against Pactiv. The trespass count appears to allege that only "Defendant L-P" caused the trespass. *See* FAC ¶¶ 116-17.

tolling agreement therefore adds 353 days to the decedent's maximum six-year limitations period and the two-year wrongful death statute for Plaintiff's claims.

Accordingly, since Plaintiff filed his initial Complaint on January 30, 2006, Plaintiff's claims can only be timely if the decedent's claims accrued after February 12, 1997 (or after February 12, 2001 for the majority of claims which are subject to a two-year limitations period).

### B. Plaintiff's Claims Accrued Upon The Decedent's First Legal Injury, Not The Discovery Of A Right of Action.

It is well-settled that a statute of limitations begins to run when a cause of action accrues. *Garrett v. Raytheon Co.*, 368 So. 2d 516, 518-19 (Ala. 1979). A claim accrues under Alabama law "as soon as the party in whose favor it arises is entitled to maintain an action thereon." *Id.* In other words, the cause of action accrues "when the injury occurs." *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983). Moreover, "the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury." *Garrett*, 368 So. 2d at 519 (citing *Home Ins. Co. v. Stuart McCorkle, Inc.*, 285 So. 2d 468, 473 (Ala. 1973)). *See also Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 497 (11th Cir. 1982) (following *Garrett*).

The Alabama Supreme Court frequently relies on its early articulation of the "first injury" rule in *Kelly v. Shropshire*, 75 So. 291, 292 (1917), where it stated that:

> If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action.

*Garrett*, 368 So. 2d at 518-19 (quoting *Kelley*); *Moon*, 435 So. 2d at 220 (same).

Alabama courts do not follow a "discovery rule" for accrual of claims. The Alabama Supreme Court has repeatedly recognized that "[t]he fact that a plaintiff discovers damage for the first time outside the limitations period does not save the plaintiff, because this Court has declined to apply a 'discovery rule.'" *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 (Ala. 2001). *See also Moon*, 435 So. 2d at 220 ("This Court has repeatedly held that a cause of action accrues when the injury occurs, and in so doing, this Court has refused to accept the so-called 'discovery rule.'") (citations omitted); *Kelly*, 75 So. at 292 ("Nor does plaintiff's ignorance of the tort or injury . . . postpone the running of the statute until the tort or injury is discovered.").[3]

Plaintiff here does not allege that the decedent suffered her first injury within the limitations period. Instead, Plaintiff alleges that the decedent "did not know and reasonably had no knowledge or way of ascertaining that her disease was caused by toxic chemicals originating from [the facility] until a time period within two years of the date of the filing of this complaint." FAC ¶ 94 (emphasis added). In other words, Plaintiff only alleges that the decedent discovered the cause of her injury within the limitations period. Such an allegation is insufficient to state a valid, timely cause of action under Alabama law.[4]

---

[3]    Indeed, the Alabama legislature had to enact a statutory discovery rule to exempt asbestos claims, and only asbestos claims, from Alabama's first injury rule. *See* Ala. Code § 6-2-30(b) ("A civil action for any injury . . . resulting from exposure to asbestos . . . shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action."); *Am. Mut. Liab. Ins. Co. v. Phillips*, 491 So. 2d 904, 908 (Ala. 1986) (holding that the statutory discovery rule applies only to asbestos claims, and not to latent injuries allegedly caused by other substances).

[4] Plaintiff may argue that the "federally required commencement date" in 42 U.S.C. § 9658(a)(1) somehow tolled the applicable statutes of limitations. However, "[m]ost federal courts have limited the application of § 9658 to situations where an underlying CERCLA claim has been made or could exist based on the presence of hazardous waste—where there is an underlying claim dealing with, or cause of action providing for, cleanup and remedial activities." *Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1137 (Ala. 1997) (citing cases). In this wrongful death action, Plaintiff does not assert any claims remotely dealing with cleanup or remedial activities.

C.    **Plaintiff's Claims Against Pactiv Accrued No Later Than November 1983, The Date Pactiv Last Owned Or Operated The Facility.**

In cases involving latent injury from alleged exposure to hazardous substances, such as here, Alabama courts interpret the first injury rule to mean that a claim accrues on the date of exposure to the hazardous substance, not on the date any injury physically manifests itself. Consistent with Alabama's continuous tort doctrine, the limitations period begins to run on the date of the last exposure caused by the defendant's active tortious conduct. Plaintiff's claims against Pactiv therefore accrued no later than November 1983, the date Pactiv last owned or operated the facility. Any subsequent exposure to contaminants allegedly released by Pactiv cannot constitute a continuing tort to extend the limitations period.

i.    **Plaintiff's Alleged "First Injury" Occurred Between March 1979 And November 1983 When Pactiv Owned And Operated The Facility.**

The Alabama Supreme Court established the "last exposure" doctrine for latent injury cases in *Garrett v. Raytheon Co.*, 368 So. 2d 516 (Ala. 1979). In *Garrett*, the plaintiff alleged that he was exposed to high doses of radiation from radar equipment manufactured by the defendants while he was in the U.S. Army from 1955 until 1957. *Id.* at 518, 522. He did not suffer any adverse affects from the exposure until 1975, when solid patches of hair began to fall out. *Id.* at 522. The plaintiff's condition subsequently deteriorated, and it was not until 1977 that he was first advised that his condition was due to the prior radiation exposure.

The court held that the plaintiff's cause of action accrued in 1957, the date of his last radiation exposure, not when he began to experience symptoms in 1975 or when he was diagnosed in 1977. In applying the first injury rule, the court reasoned:

> [T]he damage must have occurred at the time of exposure else defendant would not be liable. It is simply that all the progressive nature of the injury has not made itself manifest at the time of the last exposure. But, we have held that the statute begins to run

'whether or not the full amount of damages is apparent at the time of the first legal injury.'

\*       \*       \*

It is thus that we hold that the statute of limitations . . . began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury . . . does not postpone the running of the statute until the tort or injury is discovered.  If plaintiff was not injured in 1955-1957, then defendant committed no negligent act at that time which resulted in injury and defendant would not be liable.  If plaintiff did become injured or damaged at that time, then the statute of limitations has run.

*Id.* at 520-21 (emphasis omitted).  The radiation exposure therefore constituted a concurrent legal injury, a completed wrong, even though the plaintiff did not experience symptoms for 18 years.

The last exposure doctrine has been applied by Alabama courts in numerous other latent injury cases.  In *Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1135-36 (Ala. 1997), the plaintiff alleged that he was exposed to carbon disulfide from the defendant's manufacturing process during his employment from 1952 to 1986.  The court held that the plaintiff's claims were time-barred because they accrued on the date of the last exposure in 1986, almost nine years before the action was filed.  *Id.* at 1136, 1142.  In *Johnson v. Garlock, Inc.*, 682 So. 2d 25, 26, 28 (Ala. 1996), the court held that the plaintiffs' claims were time-barred since the plaintiffs were last allegedly exposed to asbestos in 1978 as a result of their work in the steel industry.  And in *Hillis v. Rentokil, Inc.*, 596 So. 2d 888, 889-90 (Ala. 1992), the court held that the plaintiff's claim accrued in 1987 when he was last exposed to chromated copper arsenate in the course of his employment at a lumber facility.  In each of these cases, the "last exposure" that triggered the running of the limitations period occurred while the defendant was still actively engaged in the alleged tortious conduct.

In this case, the decedent's "first injury" necessarily would have occurred when she was allegedly exposed to Pactiv's alleged emissions and releases from 1979 until November 1983. Plaintiff's claim therefore accrued no later than November 1983, even if "the progressive nature of the injury [had] not made itself manifest at [that] time [because] the statute begins to run 'whether or not the full amount of damages is apparent at the time of the first legal injury.'" *Garrett*, 368 So. 2d at 520-21.

<div align="center">

ii.      **Any Continued Exposure After November 1983 Cannot Postpone The Accrual Date Because There Is No Continuous Tort.**

</div>

Plaintiff may attempt to extend the date of the decedent's "last exposure" by arguing that chemicals emitted by Pactiv continued to persist in the environment and exposed the decedent even after Pactiv sold the facility in November 1983. However, any continued exposure would have occurred after Pactiv's alleged tortious conduct stopped.   Accordingly, Alabama's continuous tort doctrine cannot postpone the running of the limitations period.

A continuous tort only occurs where a defendant engages in "repeated tortious conduct which has repeatedly and continuously injured a plaintiff." *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983). "When a tort is deemed continuous, the limitations period runs from the last date the plaintiff was exposed to damages." *Haynie v. Howmedia Osteonics Corp.*, 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000). In contrast, "Alabama law does not recognize a continuing tort in instances where there has been a single act followed by multiple consequences." *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 & n.2 (Ala. 2001). *See also Haynie*, 137 F. Supp. 2d at 1294-95 ("[I]t takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated.").

This critical distinction played out in *Moon*. In that case, the defendant pharmacy filled the plaintiff's prescription with the wrong type of insulin. 435 So. 2d at 219. The plaintiff was

first injured when she used the insulin outside the limitations period but, not realizing the insulin was the wrong type, continued to use it within the limitations period (*i.e.*, within two years of filing suit). *Id.* at 221. The court held that each subsequent exposure to the wrong insulin was not a continuous tort: "Nothing in the facts alleged by the [plaintiff] supports their claims that [the pharmacy] committed repeated acts of negligence which could be termed a 'continuous tort' and which would extend the statutory limitations period." *Id.* at 221.

Courts have similarly rejected the application of the continuous tort doctrine to the persistence and/or migration of contamination that otherwise predates the limitations period. For example, in *LaBauve v. Olin Corp.*, No. 03-0567, 2005 U.S. Dist. LEXIS 28440, at *70-71 (S.D. Ala. 2005), the court held that under Alabama law:

> To the extent that the continuing wrongdoing claimed by plaintiffs consists of either secondary migration of Olin pollutants in the community or defendants' failure to take appropriate offsite remedial measures to correct existing contamination, such allegations do not support application of the continuous tort doctrine. Indeed, <u>a defendant's failure to clean up contamination that predates the limitations period, or the migration of such 'old' contamination from one location to another, does not constitute a continuous tort, as a matter of law.</u>

(emphasis added). *See also Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004) (holding that further migration of pollutants released before the statutory period, without further acts by the defendant, does not constitute a continuing tort); *Achee v. Port Drum Co.*, 197 F. Supp. 2d 723, 735-36 (E.D. Tex. 2002) (holding that where defendant ceased active operations in 1990, its failure to modify or reverse prior wrongful conduct by cleaning up its contaminants is not a continuing tort).

In this case, the alleged "repeated tortious conduct" by Pactiv—emissions and releases from the facility—only occurred between March 1979 and November 1983. Accordingly, the

decedent's "last exposure" to start the limitations period for Plaintiff's claims against Pactiv occurred in November 1983. Any later consequences or continuing injury from Pactiv's earlier alleged acts cannot extend the limitations period under Alabama law, as "it takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated." *Haynie*, 137 F. Supp. 2d at 1294-95. Plaintiff's claims are therefore untimely. The decedent's claims accrued by November 1983 and were thus already time-barred at her death.

D.    **Property Damage Independently Triggers The Running Of The Limitations Period On All Of Plaintiff's Claims.**

As set forth above, Plaintiff's claims against Pactiv accrued when the decedent was allegedly exposed to Pactiv's alleged emissions and releases ending in November 1983. But even apart from these personal exposures, the alleged property damage caused by the emissions and releases constituted a legal injury to the decedent so that the limitations period on all of Plaintiff's claims against Pactiv started to run by November 1983.

Under Alabama law, even where the first injury is purely economic, that injury starts the limitations period for <u>all</u> subsequent claims, whether for economic loss or personal injury that manifests at a later date. This principle was recently set forth by the Alabama Supreme Court in *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003). In *Spain*, the plaintiff brought a wrongful death claim against various tobacco companies after the death of his spouse, a cigarette smoker for most of her life. *Id.* at 102. The decedent started smoking cigarettes in 1962, was diagnosed with lung cancer in 1998, and died sometime between 1998 and 1999. *Id.* at 105 & n.1. Plaintiff filed suit in 1999, less than one year after the cancer diagnosis. *Id.*

The Alabama Supreme Court applied *Garrett*'s first injury rule to bar the plaintiff's claims, holding that any personal injury claim accrued in 1962 when the decedent was first addicted to cigarettes and suffered economic damages. The court held:

> Addiction to nicotine is a compensable injury, at a minimum, in terms of the costs of supporting an addiction. Assuming no other physical injury has manifested itself, the economic loss attributable to supporting an addiction is the first injury a smoker addicted to cigarettes sustains. . . . That other damages might follow, including, but not limited to, injury to the person, . . . should not defeat the commencement of the running of the applicable statutory limitations period.

*Id.* at 114. The court's holding in *Spain* is consistent with long-established Alabama law which holds that "the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury." *Garrett*, 368 So. 2d at 519.

The court in *Spain* also held that an economic injury triggers the limitations period for all claims, including personal injuries, "regardless of whether a plaintiff frames the complaint to seek damages for that economic loss." *Id.* The court found that "[a]rtful pleading such as is presented here, where Spain disavows seeking a recovery for all pre-cancer injuries, should not defeat the operation of the first-injury rule." *Id.* It is therefore irrelevant whether a plaintiff actually seeks to recover for early economic injuries.

In this case, Plaintiff pleads that Pactiv's alleged emissions and releases from 1979 through 1983 caused property damage. Plaintiff alleges that "toxic chemicals emitted by Defendants were persistent when deposited in Plaintiff's home and environment." FAC ¶ 85. Taking this allegation as true for purposes of this motion, the decedent would have suffered concurrent economic injury, including, but not limited to, any associated diminution in property value. "That other damages might follow, including, but not limited to, injury to the person, . . . should not defeat the commencement of the running of the applicable statutory limitations period." *Spain*, 872 So. 2d at 114. The alleged property damage would have been a completed wrong in 1983, starting the limitations periods on all of Plaintiff's claims, even if Plaintiff does not now seek to recover those damages.

II.    **Plaintiff's Claims Against Pactiv Are Barred By Alabama's 20-Year Rule of Repose.**

Even if Plaintiff's claims are timely under the applicable statutes of limitations, Plaintiff's claims are still barred by Alabama's 20-year rule of repose. More than 22 years have passed since the alleged acts and omissions giving rise to Plaintiff's claims against Pactiv transpired. Pactiv no longer owned or operated the facility after November 1983.

"Application of Alabama's rule of repose has only one element—the passage of twenty years time from the moment that the actions giving rise to the claim occurred—and, if that time has elapsed, no claim can be pursued." *Morgan v. Exxon Corp.*, 869 So. 2d 446, 448 (Ala. 2003) (emphasis in original) (citing *Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000), *aff'd* 267 F.3d 1209 (11th Cir. 2001)). The rule of repose is based on "the settled policy of this state . . . that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into." *Snodgrass v. Snodgrass*, 58 So. 201, 201-02 (Ala. 1912). Alabama courts apply the rule of repose in many types of disputes, "including those alleging tort claims." *See Ex parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 764 (Ala. 2002) (citing cases).

The rule of repose is "triggered merely by the alleged wrongful conduct of the defendant." *Morgan*, 869 So.2d at 449. It is "not based upon concepts of accrual, notice, or discovery—concepts that are applicable to statutes of limitation." *Liberty Nat'l Life Ins. Co.*, 825 So. 2d at 764. "A defining characteristic of the rule of repose is that its time period does not begin to run when the action accrues, but rather when the relevant action occurs." *Moore*, 267 F.3d at 1218. As the Alabama Supreme Court explained:

> A statute of repose . . . limits the time within which an action may
> be brought and is not related to the accrual of any cause of action;
> the injury need not have occurred, much less have been discovered.
> Unlike an ordinary statute of limitations which begins running

> upon accrual of the claim, the period contained in a statute of
> repose begins when a specific event occurs, regardless of whether
> a cause of action has accrued or whether any injury has resulted.

*Baugher v. Beaver Construction Co.*, 791 So. 2d 932, 934 n.1 (Ala. 2000) (quoting Black's Law

Dictionary 1423 (7th ed. 1999) and 54 C.J.S. Limitations on Actions § 4, at 20-21 (1987))

(applying construction statute of repose).[5]

Thus, in *Morgan v. Exxon Corp.*, the Alabama Supreme Court held that the rule of repose

barred claims similar to those asserted here.    In that case, the plaintiffs alleged that the

defendants' oil well operations contaminated their property with hazardous substances.  869 So.

2d at 447.  But one defendant had not operated the wells at issue since the 1960s and another

defendant since the early 1970s.  *Id.* at 448.  The court accordingly held that the plaintiff's claims

for negligence, trespass, and conspiracy, among other claims, were barred by the rule of repose

as to those defendants.  *Id.* at 447-49, 452.

In this case, as in *Morgan*, more than 20 years have passed since the actions giving rise to

Plaintiff's claims occurred.    Pactiv last owned and operated the facility in November 1983.

Plaintiff's claims against Pactiv should therefore be dismissed.

### III.    Plaintiff Lacks Standing To Assert The Tort Claims Asserted In Counts 1 Through 8 Since The Decedent Died Before This Action Was Filed.

Counts 1 through 8 assert various tort claims—negligence, recklessness, negligence per

se, intentional tort, trespass, conspiracy, products liability, and failure to warn—alleging that

---

[5] Certain Alabama decisions, while insisting that the rule of repose does not depend on accrual, have nonetheless suggested that the repose period can only begin to run as soon as all of the elements of the claim are present. *See, e.g., Am. Gen. Life & Accident Ins. Co. v. Underwood*, 886 S o. 2 d 8 07, 8 12 ( Ala. 2 004).  S uch a s tart d ate w ould r ender t he r ule o f r epose e ntirely superfluous in most cases, as the same trigger already applies to the shorter statutes of limitations. *See supra* Part I.B-C.  In any event, even if the rule of repose begins to run only when all elements of a claim are present, Plaintiff's claims are still barred because the claims still accrued by November 1983, more than 20 years ago. *See supra* Part I.C-D.

Pactiv's operations at the facility injured and damaged the decedent. Under Alabama law, a wrongful death claim is the <u>only</u> cause of action that is available to a personal representative when the decedent dies prior to initiating litigation. Accordingly, Counts 1 through 8 should be dismissed for failure to state a claim because Plaintiff, as the personal representative of the decedent's estate, cannot assert tort claims on the decedent's behalf.

The survival of claims is governed by Ala. Code § 6-5-462. It provides that "all claims <u>upon which an action has been filed</u> . . . survive in favor of and against personal representatives." *Id.* (emphasis added). Thus, if an action was filed prior to the decedent's death, the personal representative c an s till p ursue t he d ecedent's o riginal t ort c laims a s w ell a s a w rongful d eath action seeking punitive damages. *See, e.g., King v. Nat'l Spa & Pool Inst.*, 607 So. 2d 1241, 1246 (Ala. 1992). In contrast, "a deceased's <u>unfiled</u> tort claims do not survive the death of the putative plaintiff." *Bassie v. Obstetrics & Gynecology Assoc.*, 828 So. 2d 280; 282 (Ala. 2002). *See also Brooks v. Hill*, 717 So. 2d 759, 763 (Ala. 1998); *Brewer v. Davis*, 593 So. 2d 67, 68 (Ala. 1991). Plaintiff therefore cannot assert tort claims on the decedent's behalf because the decedent died before filing suit. *See* FAC ¶¶ 5-6.

The Alabama Wrongful Death Act, Ala. Code § 6-5-410, "remains the <u>sole remedy</u> for the tortious infliction of death, and the damages recoverable under that Act remain solely punitive." *King*, 607 So. 2d at 1248. Counts 1 through 8 therefore fail to state valid claims under Alabama law and should be dismissed.

IV.    **Count 3 (Negligence *Per Se*) Fails To State A Claim Upon Which Relief Can Be Granted.**

Count 3 purports to state a negligence *per se* claim based on Pactiv's alleged emissions and releases of toxic substances, and its failure to report those emissions and releases, in alleged violation of "the laws and regulations of the State of Alabama." FAC ¶ 106. Plaintiff's bare-bones allegations fail to state a claim upon which relief can be granted for two reasons. First, Plaintiff's failure to identify the laws at issue does not satisfy notice pleading requirements. Second, Plaintiff does not allege that the laws were designed to protect a particular class of persons to which the decedent belonged. This failure is critical—laws enacted to protect the general public cannot support a negligence *per se* claim.

A.    **Plaintiff Fails To Allege Which Laws Pactiv Supposedly Violated.**

Notice pleading requirements call for a plaintiff to "plead the specific statute on which he bases his claim for negligence per se." *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002) (granting motion to dismiss for failure to state a claim). A "generic complaint that defendant violated unspecified 'local, state and federal statutes, guidelines and regulations' does not provide fair notice" and consequently should be dismissed. *Id. See also Taunus Corp. v. New York*, 279 F. Supp. 2d 305, 311 (S.D.N.Y. 2003) (dismissing negligence *per se* claim for failure to cite the specific statutes allegedly violated); *Pincetich v. Jeanfreau*, 699 F. Supp. 1469, 1477 (D. Or. 1988) (stating that "defendants are entitled to know the specific statutes, rules and regulations which form the basis for the negligence per se claim"). Plaintiff's failure to identify which laws form the basis of his negligence *per se* claim therefore warrants dismissal of Count 3 for failure to state a claim.

B.     **Even If Plaintiff Identified The Laws At Issue, Plaintiff Does Not Allege That The Laws Were Enacted To Protect A Particular Class Of Persons To Which Decedent Belonged.**

Even if Plaintiff were to identify the laws underlying his negligence *per se* claim, the allegations in Count 3 are still insufficient to state a cause of action. Under Alabama law, "[n]ot every violation of a statute or an ordinance is negligence per se." *Parker Bldg. Servs. Co. v. Lightsey*, No. 1031377, 2005 WL 141513, at *3 (Ala. 2005). To establish negligence *per se*, "Plaintiff must prove (i) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (ii) that the plaintiff's injury was the kind of injury contemplated by the statute; (iii) that the defendant violated the statute; and (iv) that the defendant's violation of the statute proximately caused the plaintiff's injury." *Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003).

The first element is crucial. The Alabama Supreme Court has expressly held that a plaintiff cannot recover on a negligence *per se* claim unless the allegedly-violated law was enacted to protect a specific class of persons, "distinguished from the general public." *Parker Bldg. Servs. Co.*, 2005 WL 141513, at *3. Where the law's purpose is to protect the general public, it cannot form the basis of a negligence *per se* claim. *Id.* (holding that building code was designed to protect the general public and negligence per se was thus inapplicable); *Thomas Learning Ctr., Inc. v. McGuirk*, 766 So. 2d 161, 170-72 (Ala. Civ. App. 1998) (holding that contractor licensing statute was enacted to protect the public generally and thus a violation of the statute did not provide a negligence *per se* cause of action).

Here, Plaintiff simply alleges that emissions and releases, as well as Pactiv's failure to report unspecified violations of unidentified laws, constituted negligence *per se*. *See* FAC ¶ 106. Even taking Plaintiff's allegations as true, Plaintiff does not state a *prima facie* claim for

negligence *per se*. Setting aside Plaintiff's complete failure to identify a single law or regulation that Pactiv allegedly violated, Plaintiff does not allege that the violated statutes or regulations were enacted to protect a specific "class of persons to which [Plaintiff's decedent] belonged." *Dickinson*, 882 So. 2d at 302.[6] Accordingly, Count 3 fails to state a cognizable claim for relief.

### C.    In The Alternative, Plaintiff Should Be Required To Provide A More Definite Statement Of The Laws Pactiv Allegedly Violated.

Alternatively, even if Count 3 is not dismissed for failure to state a claim, Rule 12(e) nonetheless entitles Pactiv to a more definite statement of Plaintiff's legal theories. Although Count 3 alleges negligence *per se* based on "a violation of the laws and regulations of the State of Alabama," Plaintiff does not identify a single law or regulation that Pactiv allegedly violated. Presenting a classic "shotgun pleading," Plaintiff instead forces Pactiv to guess at the basis of her claim in order to frame its response. Plaintiff should therefore be required to provide a more definite statement of her claim, including reasonable specification of the statutes and regulations (and the particular provisions of those laws) that Plaintiff contends were violated.

---

[6] Although the vagueness of Plaintiff's allegation forces Pactiv (and this Court) to speculate about what laws and regulations were allegedly violated, it should be noted that Plaintiff cannot state a valid negligence *per se* claim based on alleged violations of Alabama environmental laws. The Air Pollution Control Act, for example, was enacted "to achieve and maintain such levels of air quality as will protect human health and safety [and] foster the comfort and convenience of the people," as well as to ensure that "all values may be balanced in the public interest." Ala. Code § 22-28-3(a) & (c). The Water Pollution Control Act was enacted to address "pollution of the waters of this state [which] constitutes a menace to public health and welfare." Ala. Code § 22-22-2. And the Hazardous Wastes Management and Minimization Act was enacted because the legislature found that "it is in the public interest . . . to provide for the safe management of hazardous wastes." Ala. Code § 22-30-2. Because these laws were enacted to protect the general public, they cannot form the basis of a negligence *per se* claim. *Parker Bldg. Servs. Co.*, 2005 WL 141513, at *3; *Thomas Learning Center, Inc.*, 766 So. 2d at 170-72. It is thus unclear what laws Plaintiff could possibly cite in support of a negligence *per se* claim in this case.

**V.     Count 6 (Conspiracy) Fails to State A Claim Upon Which Relief Can Be Granted.**

Rule 12(b)(6) also requires the dismissal of Count 6. Under Alabama law, a "civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 550-51 (Ala. 1993). A *prima facie* conspiracy claim thus requires: (1) an affirmative agreement or "meeting of the minds" between the alleged conspirators; and (2) a valid underlying wrong. *See First Bank of Childersburg v. Florey*, 676 So.2d 324, 327 (Ala. Civ. App. 1996). A conspiracy claim requires more than mere conclusory notice pleading. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

Rather than pleading the essential elements of a conspiracy claim with sufficient detail, however, Plaintiff attempts to state a claim based solely on conclusory statements and innuendo. These allegations of conspiracy do not meet the minimum requirements for stating a *prima facie* claim under Alabama law.

**A.     Plaintiff Fails To Allege An Agreement To Conspire.**

Plaintiff cannot establish a *prima facie* conspiracy claim against Pactiv absent an alleged agreement between Pactiv and another party to commit an underlying illegal act. *Florey*, 676 So.2d at 327. Under Alabama law, "[i]t is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 556-57. Yet, this is all Plaintiff alleges.

The First Amended Complaint does not allege a single contact between the Defendants relating to operational issues, much less a "meeting of the minds" to accomplish an illegal purpose. Viewing Plaintiff's allegations as liberally as possible, Plaintiff at most alleges that (i) Pactiv owned and operated the facility prior to Louisiana-Pacific; and (ii) that the Defendants

operated the facility "with the same local management [and] in the same manner." FAC ¶¶ 10, 40-41. Plaintiff never describes any agreement between the Defendants or any actual steps that the Defendants undertook in concert. Instead, Plaintiff simply implies that a conspiracy existed because Pactiv and Louisiana-Pacific were successive owners of the facility.

Alabama law and the Federal Rules of Civil Procedure require more. Under Alabama law, Plaintiff must identify an affirmative agreement to conspire. Because Plaintiff fails to plead the required affirmative agreement, Rule 12(b)(6) requires dismissal of Count 6.

### B. Plaintiff Fails To Adequately Plead The Underlying Basis For The Alleged Conspiracy.

Not only does Plaintiff fail to plead the requisite elements of a conspiracy, he does not adequately plead a civil wrong underlying the alleged conspiracy. "The viability of a civil conspiracy claim d epends o n t he v iability o f t he c laim r elating t o t he u nderlying civil w rong made the subject of the conspiracy." *Pescia v. Auburn Ford-Lincoln Mercury Inc.*, 68 F. Supp. 2d 1269, 1281 (M.D. Ala. 1999). *See also Barber v. Bus. Prods. Ctr. Inc.*, 677 So. 2d 223, 228 (Ala. 1996) ("Liability for civil conspiracy rests upon the existence of an underlying wrong, and if the action alleged to constitute the underlying wrong provides no cause of action, then neither does the conspiracy itself.").

Plaintiff's claim is based on Pactiv's alleged conspiracy with Louisiana-Pacific "to violate the rules, regulations and laws of the State of Alabama and the United States of America." *See* FAC ¶ 120. Yet Plaintiff does not identify which laws Pactiv allegedly violated or conspired to violate. As stated previously with respect to Plaintiff's negligence *per se* claim, a generic allegation that Pactiv conspired to violate unspecified state and federal rules, regulations, and laws does not satisfy notice pleading requirements. *See supra* Part IV.A. Accordingly,

Plaintiff's failure to adequately plead an underlying wrong destroys the viability of any conspiracy claim. Count 6 therefore fails as a matter of law and must be dismissed.

      C.      **In The Alternative, This Court Should Order Plaintiff To Provide A More Definite Statement Of His Conspiracy Claim.**

Alternatively, if this Court does not dismiss Count 6, it should order Plaintiff pursuant to Rule 12(e) to provide a more definite statement of her conspiracy claim. Count 6 fails to provide any details whatsoever regarding the alleged conspiracy, including, but not limited to, the Defendants' alleged agreement to conspire and which laws the Defendants allegedly conspired to violate. Without a plain statement of the circumstances surrounding the alleged conspiracy, Pactiv cannot reasonably frame a responsive pleading.

**VI.    Count 7 (Products Liability) Fails To State A Claim Upon Which Relief Can Be Granted.**

This Court should dismiss Count 7 for failure to state a valid claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). The AEMLD is a judicially-created doctrine of liability for defective products based on Section 402A of the Restatement (Second) of Torts. *See Casrell v. Altec Indus., Inc.*, 335 So.2d 128, 132-33 (Ala. 1976); *Atkins v. Am. Motors Corp.*, 335 So.2d 134, 140-41 (Ala. 1976). To establish liability under the AEMLD, Plaintiff must show that (i) an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the plaintiff as the ultimate user or consumer; (ii) the seller was engaged in the business of selling such a product; and (iii) the product was expected to, and did, reach the user without substantial change in the condition in which it was sold. *See Casrell*, 335 So.2d at 132-33; *Atkins* at 335 So.2d 140-41.

In this case, Plaintiff claims that Pactiv manufactured wood products and sold scrap wood to residents of Lockhart and Florala, Alabama for use as firewood. FAC ¶¶ 126-27. According

to Plaintiff, chemicals made the firewood "defective and unreasonably dangerous when burned." *Id.* ¶ 130. Count 7 is fatally defective, however, because it fails to allege the essential elements for AEMLD liability.

### A. Plaintiff Fails To Allege That Decedent Used Or Consumed A Defective Product.

As noted above, the AEMLD imposes liability on parties who sell a defective product that is "unreasonably dangerous to the plaintiff as the end user or consumer." *Casrell*, 335 So. 2d at 132-33 (emphasis added); *see also Rudd v. Gen'l Motors*, 127 F. Supp. 2d 1330 (M.D. Ala. 2001). The Alabama Supreme Court has not extended AEMLD liability to bystanders who are allegedly injured from another's use of a product. Instead, the court has stated that "[l]iability . . . attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks." *Atkins*, 335 So.2d at 141 (emphasis added). A plaintiff need not be the direct purchaser, but still must be "the ultimate user or consumer" of the product to bring an AEMLD claim. *See Dillard v. Pittway Corp.*, 719 So. 2d 188, 193 (Ala. 1998) ("[T]he ultimate user or consumer who seeks recovery in an AEMLD action need not have purchased the product, but could be a family member, friend, employee, guest, or donee of the purchaser.").

In this case, Plaintiff does not allege that the decedent actually used or consumed any of the firewood sold by Pactiv as scrap. *See* FAC ¶¶ 126-31. At most, Plaintiff asserts an AEMLD claim based on the mere allegation that the decedent was injured from the use of firewood by the general public. *Id.* ¶ 126. Alabama law, however, requires more. Because Plaintiff does not allege that the decedent b urned, used, c onsumed, or otherwise had a tangible c onnection to a defective product, Plaintiff cannot state a claim under the AEMLD.

**B.    Plaintiff Fails To Allege That Pactiv Was "In The Business" Of Selling Firewood.**

The AEMLD also only applies if the defendant was "engaged in the business of selling" the allegedly defective product. *Casrell*, 335 So.2d at 132-33; *Atkins* at 335 So.2d 140-41. "That requirement excludes isolated or occasional sellers." *Baugh v. Bradford*, 529 So. 2d 996, 999 (Ala. 1988). Thus, in *Baugh*, the Alabama Supreme Court held that a timber company was not liable under the AEMLD for injuries caused by a log loader it had leased because it was not in the business of regularly leasing or selling loaders. *Id.* The defendant merely leased a spare loader as an accommodation to a contractor that could not afford to purchase one. *Id.* Similarly, in *McGraw v. Furon Co.*, 812 So. 2d 273, 275-76 (Ala. 2001), the court held that the defendant was not in the business of selling rubber-processing machines because it merely sold used machines that it no longer needed and was, at most, only an occasional seller.

Here, Plaintiff alleges that Pactiv "sold scrap wood . . . for use as firewood in neighboring homes." FAC ¶ 78. Although Plaintiff alleges that Pactiv "was engaged in the manufacture and sale and placement of wood and wood products" (*Id.* ¶ 129), Plaintiff never alleges that Pactiv was "in the business" of selling firewood, the specific product which allegedly injured the decedent. Indeed, Pactiv allegedly sold the firewood as scrap or discarded product, not as part of its regular business. The occasional sale of a discarded item does not render the seller "in the business" of selling that product. *See McGraw*, 812 So. 2d at 275-76. Accordingly, Plaintiff fails to state a claim under the AEMLD for Pactiv's alleged sale of firewood.

**VII.    Count 9 (Spoliation, Destruction Of Evidence) Fails To State A Claim Upon Which Relief Can Be Granted.**

This Court should also dismiss Count 9, captioned "Spoliation, Destruction of Evidence," which vaguely asserts that unspecified laws required Pactiv to maintain unspecified records.

FAC ¶ 143.  Plaintiff alleges that these unspecified records "may have been subject to spoliation or destruction."  *Id.* (emphasis added).[7]  Conceding that the unspecified records are not needed to prove his other claims, Plaintiff nonetheless asserts that (i) spoliation is an independent civil cause of action, and (ii) this Court should shift the burden of proof to Defendants on all other causes of action in the First Amended Complaint.  *Id.* ¶¶ 143, 153-54.  Both assertions are incorrect as a matter of law.

### A.    Alabama Does Not Recognize A Cause Of Action For "Spoliation."

Even assuming that Plaintiff's generalized spoliation allegations are true, Count 9 fails to state a claim because Alabama law does not recognize spoliation as a cause of action.  In *Christian v. Kenneth Chandler Const. Co.*, 658 So. 2d 408, 413 (Ala. 1995), the Alabama Supreme Court expressly rejected "spoliation" as an independent tort.  *See also Brown Electro Mech. Sys., Inc. v. Thompson Eng'g., Inc.*, 848 So. 2d 238, 240 (Ala. 2002) ("[T]his Court ha[s] never recognized spoliation of evidence as a cause of action."); *Smith v. Atkinson*, 771 So. 2d 429, 432 (Ala. 2000) ("This Court has refused to recognize such a cause of action when the spoliator was a defendant in an action.").  Because spoliation is not a cause of action under Alabama law, Rule 12(b)(6) requires this Court to dismiss Count 9 for failure to state a claim upon which relief can be granted.

### B.    Plaintiff Concedes That The Allegedly-Destroyed Records Are Not Material To His Claims.

The plain language of the First Amended Complaint requires dismissal of Count 9 even if this Court concludes that Plaintiff's spoliation allegations somehow amount to a recognized cause of action.  Although proof of spoliation may support an adverse inference of liability,

---

[7] Indeed, if Plaintiff does not even know whether there is any factual basis for a spoliation claim, Count 9 is entirely premature.  If Plaintiff later discovers what he believes to be a basis for such a claim, Plaintiff can raise the issue at that time.

courts cannot shift the evidentiary burden of proof unless the missing documents are critical to a party's case. *Vesta v. Fire Ins. Corp. v. Milam & Co. Constr., Inc.*, 901 So. 2d 84, 95-96 (Ala. 2004) (declining to shift the burden of proof because "this is not a case where all of the critical evidence is unavailable"). Indeed, the missing documents must be "key evidence" of Plaintiff's claims. *Id.* (quoting *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 176 (Ala. 2000)).

Here, Plaintiff explicitly concedes that (i) he is unsure whether spoliation actually occurred, and (ii) that the possibly-destroyed records are "not necessary for adequate proof of [his] claim." FAC ¶ 143. If the allegedly-spoliated records are not necessary to his claims, Plaintiff can neither state a cause of action nor justify shifting the burden of proof. *Vesta,* 901 So.2d at 95-96. Thus, Count 9 would fail to state a claim upon which relief can be granted even if Alabama recognized a cause of action for spoliation. Rule 12(b)(6) requires this Court to dismiss Count 9.

### C.    In The Alternative, This Court Should Order Plaintiff To Provide A More Definite Statement Of His Spoliation Claim.

Alternatively, if this Court does not dismiss Count 9, Pactiv respectfully requests a more definite statement under Rule 12(e). Claiming that unspecified "laws" required Pactiv to maintain unidentified "written records" relating to the facility, Plaintiff provides no indication whatsoever as to what laws she contends are at issue. FAC ¶¶ 142-54. Nor does Plaintiff provide even basic information regarding the records that "<u>may have been</u> subject to spoliation." *Id.* ¶ 143 (emphasis added). Plaintiff thus leaves Defendants to guess about the records at issue, what the general contents might have been, the laws or regulations requiring preservation, and, most importantly, when and how the alleged spoliation occurred. Rule 12(e) entitles Pactiv to basic information regarding Plaintiff's claims. Therefore, this Court should require a more definite statement of the allegations in Count 9 so that Pactiv can reasonably respond.

**VIII.   Count 10 (Homicide) Fails To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff lacks standing to bring a criminal homicide claim under Alabama law. Count 10 asserts a claim for "homicide."  In pertinent part, Count 10 alleges that Pactiv "violated the criminal statutes of the State of Alabama." FAC ¶ 155.  Although Plaintiff's "homicide" claim does not set forth or incorporate any factual allegations to support these extreme allegations, Plaintiff asserts that these criminal violations arose because Pactiv "manifest[ed] an extreme indifference to human life" and "recklessly engaged in conduct which created a grave risk of death." Count 10, while devoid of specifics, on its face describes a claim for criminal homicide. *See* Ala. Code § 13A-6-2(a)(2) (a person commits murder if "[u]nder circumstances manifesting an extreme inference to human life, he reckless engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person").

Even if Plaintiff's allegations are true, however, his "homicide" cause of action fails to state a claim upon which relief can be granted because private citizens cannot enforce Alabama's criminal statutes. *See State ex rel. Mullis v. Mathews,* 66 So. 2d 105,112 (Ala. 1953); *see also Stubblefield v. State*, 47 So. 2d 662, 663 (Ala. Civ. App. 1950).  Alabama law designates the State, through its Attorney General and District Attorneys, as the prosecutor for criminal laws. *See* Ala. Code § 36-15-1(2).  Thus, criminal claims can only be brought "by the state in its sovereign capacity, not by private citizens as individuals." *Mullis*, 66 So. 2d at 112.

Indeed, the Alabama Supreme Court has expressly rejected claims of civil liability based solely on criminal acts.  In a case directly on point, the plaintiffs in *Martinson v. Cagle*, 454 So. 2d 1383, 1385 (Ala. 1984), asserted civil liability on the theory that defendants committed criminal assault and battery by striking plaintiffs' automobile with another car.  The trial court granted a directed verdict for defendants and the Alabama Supreme Court affirmed, holding that

counts in a complaint alleging "only that the criminal acts were committed and that the [Plaintiff] was thereby injured, do not state a cause of action for which relief may be granted, even if liberally construed." *Id.*

Here, Count 10 appears to seek civil liability based solely on Pactiv's alleged violation of Alabama's criminal homicide statute. FAC ¶¶ 155-61. Not only does Plaintiff lack standing to enforce Alabama criminal law, but such causes of action inherently fail to state a claim upon which relief may be granted under Alabama law. *Mullis*, 66 So. 2d at 112; *Martinson*, 454 So. 2d at 1385. Consequently, this Court should dismiss Count 10.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, this Court should grant Pactiv's motion to dismiss the First Amended Complaint. In the alternative, if the Court does not dismiss Counts 3, 6, or 9, Plaintiff should be ordered to provide a more definite statement of those claims.

Dated: March 22, 2006

<div align="center" style="margin-left:40%">

By:    **s/ John A. Earnhardt**
H. Thomas Wells, Jr.
Alabama Bar No. WEL004
twells@maynarcooper.com
John A. Earnhardt
Alabama Bar No. EAR006
jearnhardt@maynardcooper.com
**Counsel for Pactiv Corporation**

</div>

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2006, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following:

### Counsel for Defendant Louisiana-Pacific Corporation:
Dennis R. Bailey, Esq.
R. Austin Huffaker, Esq.
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104
drb@rsjg.com
rah2@rsjg.com

### Attorneys for Plaintiffs:

W. Eason Mitchell
The Colom Law Firm, LLC
Post Office Box 866
Columbus, MS 39703-0866
emitchell@colom.com

Gregory A. Cade
Environmental Litigation Group
3529 Seventh Avenue South
Birmingham, AL 35222
gregc@elglaw.com

s/ John A. Earnhardt
OF COUNSEL